IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     $111,720.00 IN UNITED STATES CURRENCY;
2.     $238,400.00 IN UNITED STATES CURRENCY FROM ALPINE BANK SELF-SERVICE STORAGE BOX #103;
3.     $3,861.00 FROM ALPINE BANK ACCOUNT #8910777286;
4.     $151,208.68 FROM ALPINE BANK ACCOUNT #8970777267;
5.     2020 TOYOTA RAV4, VIN: 2T3A1RFV5LC064271;
6.     2018 BMW 320XI, VIN: WBA8A3C52JA498879; AND
7.     $200,060.00 FROM ALPINE BANK ACCOUNT #8970733187.

       Defendants.

---

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

---

The United States of America, by and through United States Attorney Jason R. Dunn and Assistant United States Attorney Laura B. Hurd, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

<u>JURISDICTION AND VENUE</u>

1.     The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981(a), seeking forfeiture of defendant assets based upon violations of 21 U.S.C. § 801, *et seq.* and 18 U.S.C. §§ 1956 and 1957.  This Court has jurisdiction under 28 U.S.C. §§ 1345

Denver, Colorado.   Defendant $151,208.68 from Alpine Bank account #8970777267 is currently being held by Customs and Border Protection in the United States Treasury Fund.

      e.    2020 Toyota Rav4, VIN: 2T3A1RFV5LC064271, ("defendant Toyota Rav4") was seized from David Josh Sermos in Denver, Colorado on May 4, 2020.   Upon information and belief, defendant Toyota RAV4 is registered in the name of David Josh Sermos, and is unencumbered.   Defendant Toyota Rav4 is currently being held by Customs and Border Protection.

      f.    2018 BMW XI, VIN: WBA8A3C52JA498879, ("defendant BMW") was seized from David Josh Sermos in Denver, Colorado on March 23, 2020.   Upon information and belief, defendant BMW is registered in the name of David Josh Sermos, and is unencumbered.   Defendant BMW is currently being held by Customs and Border Protection.

      g.    $200,060.00 from Alpine Bank account #8970733187 was held in the name of David Josh Sermos and David E. Sermos and was seized on June 9, 2020, in Denver, Colorado.   Defendant $200,060.00 from Alpine Bank account #897073318 is currently being held by Customs and Border Protection in the United States Treasury Fund.

## FACTUAL BASIS FOR FORFEITURE

4.    Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

**Background Regarding the Businesses**

5.      On January 23, 2020, the Denver Police Department (DPD) received information from a Denver Excise and Licenses inspector who attempted to conduct a compliance inspection of the marijuana business, Colorado General Service Provider (herein "CGSP"), located at 6767 East 39th Avenue, Unit 104, in Denver, Colorado. The inspector and State of Colorado Marijuana Enforcement Division (herein "MED") investigators had attempted to contact David Josh Sermos, the owner of CGSP, at CGSP on multiple days, but were unable to meet with him.   In addition, the inspector and MED investigators had left voice mails for David Josh Sermos, and had sent emails to him, but David Josh Sermos did not return any of those phone calls or emails.

6.      CGSP is licensed by both MED and Denver Excise and Licenses to operate a Retail Marijuana Products Manufacturing business (herein "MIP") at 6767 East 39th Avenue, Unit 104, in the City and County of Denver, Colorado.

7.      Marijuana products manufacturing businesses use marijuana plant product to create marijuana concentrate.   Businesses with this type of license produce smokable concentrate (shatter, wax, butter, etc.), vaporizer cartridges containing marijuana concentrate, infused marijuana edibles, and tinctures.   Generally, businesses with this type of license purchase low-grade marijuana "shake and trim" and not the more expensive marijuana bud and flower for the extraction process.

**MIP Licenses Associated with David Josh Sermos**

8.      On April 14, 2014, MED records show that David Josh Sermos was granted a retail MIP license for Mega Giant LLC, located at 3845 Forest Street, Denver, Colorado

80207.

9.      On approximately October 22, 2013, according to Colorado Secretary of State (CSOS) records, Articles of Incorporation for a Profit Corporation were filed for Mega Giant LLC.   This initial filing identified the registered agent and incorporator as David Josh Sermos at 820 South Monaco Parkway, Suite 158, Denver, Colorado 80224.

10.     On June 4, 2015, according to Colorado Secretary of State (CSOS) records, Articles of Incorporation for a Profit Corporation were filed for Flatirons General Service Provider Ltd.   This initial filing identified the registered agent and incorporator as Mega Giant LLC and David Josh Sermos at 191 University Boulevard, #323, Denver, Colorado 80206.

11.     On September 15, 2015, MED records show that David Josh Sermos was granted a retail MIP license for another company, Flatirons General Service Provider (herein "FGSP"), located at 6859 N Foothills Hwy, Unit C500, Boulder, Colorado 80302. According to MED records, David Josh Sermos stated that FGSP was a retail MIP manufacturer, with a tradename boulderchocolates.com

12.     On approximately March 11, 2018, CSOS records show Articles of Incorporation for a Profit Corporation were filed for Colorado General Service Provider. This initial filing identified the registered agent and incorporator as David Josh Sermos at 191 University Boulevard, #323, Denver, Colorado 80206.

13.     On June 19, 2018, MED records show that David Josh Sermos was granted a retail MIP license for a third company, Colorado General Service Provider (CGSP), located at 6767 East 39th Avenue, Unit 104, Denver, Colorado 80207.

14.     Marijuana licensees are required by the State of Colorado to track their marijuana and marijuana products in an inventory tracking system known as Marijuana Enforcement Tracking, Reporting and Compliance ("METRC").   When a licensee enters into an agreement to sell marijuana product to another licensee, a marijuana transport manifest must be created in METRC.   The manifest documents information relevant to the transfer to include the amount and type of marijuana product, the originating entities information, the destination of the product, and the approximate time of departure and arrival to the destination.   It further requires the name of the individual picking up the product listing their contact information and type of vehicle they are driving with Colorado registration, and the route to be driven back to the receiving destination.   Once the marijuana product has reached the licensed destination, the receiving location acknowledges the receipt of the product in METRC.   The marijuana must go from one licensed location to the receiving licensed location.

**Mega Giant LLC METRC**

15.     From May 19, 2014 through May 11, 2015, METRC records show that David Josh Sermos used the Mega Giant LLC MIP license to purchase over 130 pounds of marijuana bud.   From June 4, 2014 through November 19, 2015, the same METRC report showed that Mega Giant LLC sold approximately 10,355 units of infused marijuana edible products.   This report did not indicate the price the marijuana was purchased for or the price the edibles sold for.

16.     After November 19, 2015, there were no other reported sales of marijuana products by Mega Giant LLC in METRC.   .

### FGSP METRC

17.     From June 30, 2016 to August 9, 2017, METRC records show that David Josh Sermos used the FGSP MIP license to purchase over 1,200 pounds of marijuana bud for over $1,400,000 (averaging approximately $1,160 a pound).   During this time period, there were no reported sales or products produced by FGSP in METRC.

### CGSP METRC

18.     From June 19, 2018 to January 30, 2020, METRC records show that David Josh Sermos used the CGSP MIP license to purchase over 2,800 pounds of marijuana bud for over $2,800,000 (averaging approximately $1,000 a pound).   During this time period, there were no reported sales or products produced by CGSP in METRC.

19.     In total, FGSP and CGSP purchased $4,200,000 in marijuana that was entered into METRC.   There are no corresponding sales recorded in METRC from FGSP and CGSP to any retail marijuana stores.

20.     A MED Investigative Report for Consideration of First Licensing of New Applicant:   Colorado General Service Provider (CGSP), dated June 6, 2018, references two closed investigations for David Josh Sermos.

21.     According to the report, in a closed 2015 investigation, David Josh Sermos was given a verbal warning for failing to use METRC to identify and track infused products.   The report states that, "Mr. Sermos, in an email response stated he never received a verbal warning".

22.     The report also references a closed 2017 Report of Investigation, regarding a missing 1,175 pounds of retail marijuana in relation to the sale of FGSP.   The document

7

states that, "Mr. Sermos told MED investigators that he destroyed the retail marijuana". Based on the average purchase cost of marijuana under FGSP of $1,160 a pound, David Josh Sermos would have destroyed approximately $1,363,000 of retail marijuana.

23.     All businesses operating with a MIP license in the City and County of Denver are also required to be permitted by the Denver Fire Department (DFD) to operate extraction equipment. The permits authorize the storage and use of various types of compressed gases such as carbon dioxide ($CO_2$), butane, and propane.

24.     On or around September 25, 2019, the DFD conducted an inspection of CGSP at 6767 East 39th Avenue, Unit 104, in Denver, Colorado with David Josh Sermos. DFD observed that there was no extraction equipment in the facility, that there was no storage of flammable or hazardous products, and that there was no marijuana or marijuana products seen.   David Josh Sermos told DFD that he was only using the facility for storage.   At the time of the DFD inspection, David Josh Sermos had been purchasing and manifesting marijuana into this facility for approximately 14 months.

### Surveillance

25.     On February 26, 2020, DPD applied for and was granted a Denver search warrant for the installation and monitoring of a GPS tracking device for a 2018 silver BMW 320xi with Colorado license plate AAWO52, VIN # WBA8A3C52JA498879.   The BMW is registered to a David Josh Sermos.   DPD conducted surveillance of Sermos prior to, and after the installation of the tracking device.

26.     On March 10, 2020, DPD surveillance observed the BMW being driven by David Josh Sermos.   David Josh Sermos met a male driving a black Toyota Corolla with

Colorado license plate CJC040, later identified as Zachary Norton.   The Toyota Corolla was registered to a Zachary Saul Norton at an address in Elizabeth, Colorado.   David Josh Sermos and Norton met at a Bed Bath and Beyond parking lot where Norton was seen placing something in David Josh Sermos's trunk after it opened.

27.   Per MED records, Norton previously worked for David Josh Sermos at Mega Giant, LLC for approximately four months, but is not currently badged to work in the Colorado marijuana industry and does not represent any Colorado licensed marijuana businesses.   It is illegal for David Josh Sermos to sell marijuana purchased through his business to Norton.

28.   On March 11, 2020, DPD surveillance observed David Josh Sermos leave his residence in the BMW and drive to the 7300 block of East 29th Avenue to a parking lot behind the Noodles and Company.   David Josh Sermos was seen dumping trash into the dumpster.   Detectives retrieved marijuana packaging, rubber gloves, and rubber bands from the trash.   David Josh Sermos then drove to Colorado Kind Holdings, LLC, a Colorado licensed marijuana.

29.   On March 11, 2020, METRC records show that David Josh Sermos received 32.734239 pounds of marijuana for $35,614.29 from Colorado Kind Holdings, LLC.   The receiving business was CGSP.   No other transactions for David Josh Sermos or CGSP for March 11, 2020, were manifested in METRC.

30.   David Josh Sermos departed Colorado Kind Holdings, LLC and returned to his residence in Denver; and not directly to his business, CGSP.

31.   David Josh Sermos then drove the BMW to CGSP.

32.     Approximately twenty minutes later, David Josh Sermos drove to the parking lot behind the Noodles and Company and dumped trash in the dumpster. From there, he drove back to his residence. Detectives retrieved marijuana packaging and rubber gloves from the trash in Noodles and Company.

33.     David Josh Sermos then drove the BMW to the Stapleton Dog Park where surveillance saw him meet Norton.

34.     David Josh Sermos and Norton (Norton in the Corolla) drove separately to the 2200 block of Trenton Street where they met up in an alley.   Surveillance could not see what occurred in the alley. After a few minutes they both drove off, David Josh Sermos back to his residence and Norton out of the area.

35.     On March 13, 2020, DPD surveillance saw David Josh Sermos's BMW at Schomp BMW in Highlands Ranch, Colorado. DPD surveillance observed a technician remove the GPS tracking device from the BMW and give it to David Josh Sermos's wife, Leslie Sermos.   DPD contacted Leslie Sermos and impounded the BMW.

36.     David Josh Sermos arrived at his residence in his 2020 Toyota Rav4 with Colorado license plate 698ZUA (VIN: 2T3A1RFV5LC064271) and was contacted by DPD officers.

### Interview of David Josh Sermos

37.     DPD detectives spoke with David Josh Sermos.   David Josh Sermos told detectives, "I knew you guys were coming".

38.     He went on to tell DPD detectives that he saw someone take his trash behind the Noodles and Company on March 11.   He stated he went home and checked

10

his car and found the GPS tracker hidden on his BMW.   He stated that he immediately started to clean up and repeated, "I knew you were coming."

39.     David Josh Sermos stated he was having a hard time with his business and had to start selling marijuana to pay his rent and his kid's school tuition.

40.     On a typical day, David Josh Sermos said that when he goes to his marijuana business, the first thing he does is turn on a machine that pauses the video surveillance of the business. Colorado Marijuana Code requires marijuana businesses to have a video surveillance system to monitor the activity relating to the marijuana.   David Josh Sermos said he has a vacuum sealer in his car that uses to repackage the marijuana that he buys, then he puts the new packages in a black trash bag.

41.     David Josh Sermos stated that he recently sold marijuana to an individual identified as, "M."   David Josh Sermos said he sold four to six pounds for $8,750 and that he made a $25 a pound profit. Detectives said that $25 was not much profit for all the risk.   David Josh Sermos responded that he did not have a choice because he was in financial trouble.

42.     Detectives told David Josh Sermos that on the night of March 6, 2020, surveillance saw him leave his business with a large trash bag after having purchased approximately 60 pounds of marijuana over the previous week, according to METRC. David Josh Sermos stated that he sold the marijuana to someone, but did not know their name or number.

43.     David Josh Sermos stated that he only had money in two banks, Key Bank and First Bank, and only had approximately $5,000 in both banks combined.

**Search Warrants**

44.     On March 13, 2020, DPD obtained search and seizure warrants for David Josh Sermos's residence, Colorado General Service Provider located at 6767 East 39th Avenue, Unit 104; and for accounts at Alpine Bank in Denver, Colorado.

45.     During the search at David Josh Sermos residence in Denver, Colorado, law enforcement officers discovered a reusable grocery bag hanging on a metal shelf in the garage containing a large bundle of cash rubber-banded together that was approximately $10,250 in United States currency.   Just inside the door from the garage, officers located another reusable grocery bag hanging from a similar shelf containing two opened vacuum sealer bags with large bundles of rubber-banded cash, later determined to be approximately $101,470 in United States currency. In total, defendant $111,720.00 in United States currency was seized at the Sermos's residence during the search.

46.     At the search of CGSP, at 6767 East 39th Avenue, Unit 104, Denver, Colorado, officers found a medium-sized open area that appeared "un-used and mostly abandoned".   The room contained a large yellow fire safe cabinet with surveillance equipment inside, two storage freezers, a small refrigerator/freezer, two washing machines, and a portable air conditioning unit.   The freezers contained a bag with a small amount of dried marijuana and three containers with suspected marijuana "butter."

47.     On March 23, 2020, a search warrant for David Josh Sermos's BMW was executed.   Upon opening the trunk, the officers immediately smelled a strong odor of marijuana.

**Defendant $238,400.00 in United States Currency**

48.     On March 18, 2020, the safe deposit box 103, rented by David Josh Sermos at Alpine Bank was searched.   During the search, a reusable grocery bag with three vacuum-sealed bags containing defendant $238,400.00 in United States currency from Alpine Bank self-service storage box #103 was discovered.

## FINANCIAL INVESTIGATION

49.     Based on the underlying investigation into David Josh Sermos, law enforcement also conducted a financial investigation into David Josh Sermos and the businesses associated with him.

50.     A review of Colorado Department of Labor records going back seven years shows no reported W-2 income for David Josh Sermos or Leslie Sermos.

### Tax Reporting

#### David Josh Sermos and Leslie Sermos

51.     Colorado Department of Revenue records show that David Josh Sermos and Leslie Sermos filed joint tax returns for 2015 through 2018.   Their self-employment combined income reported after non-passive losses from Mega Giant LLC for four years was $99,064.00.

#### Mega Giant, LLC

52.     Colorado Department of Revenue records show that partnership income tax returns were filed for Mega Giant LLC in tax years 2015, 2016, 2017 and 2018.

53.     In 2015, Mega Giant LLC reported gross receipts of $46,633.00, and after cost of goods sold of $36,315.00 and other deductible expenses and depreciation altogether totaling $60,157.00, the business reported a loss of $49,839.00.

54.     Generally, gross receipts are the total amounts the organization received from all sources during its annual accounting period, without subtracting any costs or expenses.   In turn, cost of goods sold refers to the direct costs of producing the goods sold by a company.   This amount includes the cost of the materials and labor directly used to create the good.   It excludes indirect expenses, such as distribution costs and sales force costs.

55.     In 2016, Mega Giant LLC reported no gross receipts after cost of goods sold of $15,500.00, and other deductible expenses and depreciation altogether totaling $12,123.00, the business reported a loss of $27,623.00.

56.     In 2017, Mega Giant LLC reported no gross receipts and no cost of goods sold.   However, the other deductible expenses and depreciation altogether totaled $23,881,00, and the business reported a loss of $23,881.00.

57.     In 2018, Mega Giant LLC reported no gross receipts and no cost of goods sold.   However, the other deductible expenses and depreciation altogether totaled $12,574.00, and the business reported a loss of $12,574.00.

**Flatirons General Service Provider**

58.     Colorado Department of Revenue records show that corporate income tax were filed for Flatirons General Service Provider in tax years 2015, 2016 and 2017.

59.     In 2015, FGSP reported no gross receipts and no cost of goods sold. However, the other deductible expenses reported totaled $18,797.00, and the business reported a loss of $18,797.00.

60.     In 2016, FGSP reported no gross receipts and cost of goods sold of

14

$428,467.00. Additionally, the other deductible expenses reported on this return altogether totaled $25,245.00, and the business reported a loss of $453,712.00.

61.　　In 2017, FGSP reported $475,000.00 in gross receipts and cost of goods sold of $993,985.00. Additionally, the other deductible expenses reported on this return altogether totaled $31,000.00, and the business reported a loss of $549,985.00.

62.　　As discussed in more detail below, in September 2017, David Josh Sermos sold FGSP and its MIP for $475,000.00. The gross receipts and commissions reported on the 2017 return are a result of the sale of the business and not the reporting of actual sales.

### Colorado General Service Provider

63.　　Colorado Department of Revenue records show that a corporate income tax return was filed for Colorado General Service Provider in tax year 2018.

64.　　In 2018, CGSP reported no gross receipts and cost of goods sold of $467,254,00. Additionally, the other deductible expenses reported, totaled $18,378.00, and the business reported a loss of $486,132.00.

65.　　In total, FGSP and CGSP have reported losses of approximately $1,500,000.00 since 2015 with no gross receipts other than the sale of FGSP's MIP license in 2017.

66.　　Based on the underlying criminal investigation and financial investigation into Mega Giant LLC, FGSP, and CGSP, the businesses' MIP licenses were used as a means to obtain retail marijuana in large quantities, but the MIP licenses were not used by David Josh Sermos to manufacture marijuana infused products.

15

67.     Further, after 2015, FGSP and CGSP were companies created to disguise the illegal sale of marijuana, in violation of federal law and Colorado marijuana licensing requirement.

**Cash Transactions**

68.     From September 6, 2016 and September 29, 2019, $1,356,590.00 in recorded cash purchases exceeding $10,000.00 were made by FGSP, CGSP, and David Josh Sermos at various retail marijuana businesses to purchase marijuana.   During this same timeframe, no reported sales were recorded in METRC, and there were also no reported gross receipts accounting for sales through any of the businesses associated with David Josh Sermos on the businesses' tax returns.

69.     In addition, DPD contacted Dale Campbell, the registered agent for the company that rented a home to David Josh Sermos and Leslie Sermos.   Campbell stated that the rent is $2,295.00 a month and that David Josh Sermos typically deposits cash directly into Campbell's bank account.

70.     For each licensed marijuana business, MED and Denver Excise and Licenses keep a copy of the lease on file.  The lease agreement for 6767 East 39th Avenue, Unit 104 in Denver, Colorado indicated that rent was $1,000 per month.

71.     During the search of the Sermos's residence, two receipts for cash payments of $1,000 each for rent were located.   The receipts indicated that they were for "CGSP #104" for March and April 2020.

**Financial Accounts**

72.     During the course of the investigation, several financial accounts were

identified that were associated with David Josh Sermos, Leslie Sermos, and Mega Giant LLC.

### First Bank Account #3092

73.     On February 24, 2014 First Bank account ending in #3092 was opened in the name of Mega Giant LLC.   On April 1, 2014, the balance was $2,528.74.   From April 1, 2014 until it was closed in June 2014, the only deposits consisted of on $4,500.00 deposit and one check in the amount of $1,500.00.

74.     Although some withdrawals from First Bank Account ending in #3092 appear to be for businesses expenses, the majority of withdrawals appear to be for restaurants and other personal expenses.

### First Bank Account #4326

75.     On July 29, 2016, First Bank account ending in #4326 was opened and Leslie Jennifer Sermos was the only signor on this account.

76.     From July 29, 2016 to April 3, 2020, $89,976.30 in cash was deposited into the First Bank account ending in #4326.

### First Bank Account #5460

77.     On April 13, 2001, First Bank account ending in #5460 (First Bank account #5460) was opened and David Josh Sermos was the only signor on this account.   In October 2017, this account was closed.

78.     Between April 14, 2014 and October 24, 2017, a total of approximately $30,921.05 in cash deposits were made into First Bank account #5460.   The withdrawals out of First Bank account #5460 appeared to be primarily living and entertainment

expenditures.

79.     On July 22, 2015, First Bank account #5460 had a balance of $2,368.45, which was comprised of two cash deposits on June 2 and June 24, 2015, totaling $3,680.00.   In addition, on that same day, a cashier's check in the amount of $6,000.00 was deposited into First Bank account #5460 from David Josh Sermos's Wells Fargo account ending in #5210.

80.     On July 24, 2015, a withdrawal in the amount of $4,700.00 was posted to First Bank account #5460, which according to MED records was a check to the Department of Revenue for FGSP's initial application fee and license fee to obtain the FGSP's MIP license.

81.     In addition, on August 11, 2015 a withdrawal in the amount of $2,500.00 was posted to First Bank account #5460, which according to MED records corresponds to a check to Boulder County for the local fees associated with FGSP's MIP license.

**Facilitating Alpine Bank Account #5199 and #5205**

82.     On approximately September 17, 2017, MED records show that David Josh Sermos sold FGSP's MIP license for $475,000.00.

83.     According to the Asset Purchase Agreement, $31,000.00 was paid out in brokerage fees as part of the transaction and 1st Security Escrow Company, LLC was designated to receive and disperse the funds.

84.     On September 22, 2017, Alpine Bank account ending in #5199 (Alpine Bank account #5199) was opened and David Josh Sermos was the only signor on the account.

85.     On September 22, 2017, Alpine Bank account #5199 received a wire in the

amount of $443,670 from 1st Security Escrow Company, LLC.   That same day, another $500.00 deposit was made into the account.

86.     Between May 22, 2018 and February 11, 2019, Alpine Bank account #5199 received a total of $7,074.00 in deposits, which were comprised of a federal tax refund check in the amount of $4,874.00, and two cash deposits, totaling $2,200.00. No other deposits were made into Alpine Bank account #5199.

87.     From September 22, 2017 to February 11, 2019, $51,096.00 was withdrawn in cash from Alpine Bank account #5199.

88.     In addition, on April 17, 2018, David Josh Sermos wrote a check from Alpine Bank account #5199 to support his other MIP license, specifically Check #1004 to the Colorado Department of Revenue in the amount of $16.00 for the wholesale sales tax license for CGSP.

89.     On July 20, 2018, $400,000.00 was withdrawn from Alpine Bank account #5199 and deposited into Alpine Bank account ending in #5205.

90.     David Josh Sermos was the sole signor on Alpine Bank account ending in #5205.

91.     On September 22, 2017, a $500.00 cash deposit was made by "David Sermos" into Alpine Bank account ending in #5205.   No other deposits were made into Alpine Bank account ending in #5205; however, bank interest of approximately $18.00 accrued.

92.     On February 11, 2019, $400,518.15 was withdrawn from Alpine Bank account ending in #5205 and deposited into Alpine Bank account ending in #7267,

discussed below.

93.     On February 11, 2019, $2,610.00 was transferred from Alpine Bank account #5199 to Alpine Bank account ending in #7286, discussed below.

**Alpine Bank Account #8910777286**

94.     On February 11, 2019, Alpine Bank account #8910777286 ("Alpine Bank account #7286") was opened in the name of David Josh Sermos. David Josh Sermos was the sole signor on Alpine Bank account ending in #7286 until October 4, 2019, when David Sermos, believed to be David E. Sermos, was added to the account.   David E. Sermos is the father of David Josh Sermos.

95.     On February 11, 2019, $2,610.00 was deposited into Alpine Bank account #7286 from Alpine Bank account #5199, which on September 22, 2017, received the wire in the amount of $443,670, discussed above.

96.     On July 18, 2019, the only additional deposits into Alpine Bank account #7286 totaled $8,944.87, which included cash deposits totaling $1,593.00 and a federal tax return check in the amount of $7,058.87, which was transferred on the same day and deposited into Alpine Bank account ending in #7267.   The only other withdrawals were internal banking fees.

97.     On May 4, 2020, defendant $3,861.00 from Alpine Bank account #8910777286 was seized.

**Alpine Bank Account #8970777267**

98.     On February 11, 2019, Alpine bank account #8970777267 ("Alpine Bank account #7267") was opened and David Josh Sermos was the only signor.

99.     On October 4, 2019, David E. Sermos was added to the account.

100.     As discussed above, on February 11, 2019, $400,518.15 was deposited into Alpine Bank account #7267 from Alpine Bank account #5205; and on July 18, 2019, $7,058.87 was deposited into Alpine Bank account #7267, which was the federal tax return transferred from Alpine Bank account #7286, discussed above.

101.     On October 4, 2019, $200,000.00 was withdrawn from Alpine Bank account #7267 and deposited into Alpine Bank account #8970733187, discussed below.

102.     On November 22, 2019, check number 1001, for $23,317.00 was written from Alpine Bank account #7267 to Groove Toyota, "2020 RAV4" was written into the memo section of this check.   This check purchased defendant 2020 Toyota Rav4, VIN: 2T3A1RFV5LC064271.

103.     On November 23, 2019, check number 1002, for $33,684.08 was written from Alpine Bank account #7267 to Schomp BMW, "2018 BMW 320i" was written in the memo section of this check.   This check was used to purchase defendant 2018 BMW XI, VIN: WBA8A3C52JA498879.

104.      After the purchase of these two vehicles, there were no other significant deposits into or withdrawals from Alpine Bank account #7267.

105.     On June 9, 2020, defendant $151,208.68 from Alpine Bank account #8970777267 was seized.

**Alpine Bank Account #8970733187**

106.     On December 21, 2018, Alpine Bank account #8970733187 (Alpine Bank account #3187) was opened and David E. Sermos was the only signor on this account.

On October 4, 2019, David Josh Sermos was added to the account.

107.    As discussed above, on October 4, 2019, $200,000.00 was deposited into Alpine Bank account #3187 from Alpine Bank account #7267.   Additionally, on October 4, 2019, a cash deposit of $60.00 was made into Alpine Bank account #3187.   After October 4, 2019, no deposits or withdrawals were made in Alpine Bank account #3187.

108.    On June 9, 2020, defendant $200,060.00 from Alpine Bank account #8970733187 was seized.

## CONCLUSION

109.    David Josh Sermos used the FGSP's and CGSP's MIP licenses and obtained over 3,000 pounds of marijuana for $4,200,000. METRC has no record that any of the bulk marijuana that David Josh Sermos purchased with the FGSP and CGSP licenses was sold, transferred, or converted into a marijuana infused product.

110.    Surveillance observations and admissions by David Josh Sermos show that he was selling the marijuana purchased with his MIP licenses illegally for a profit. Further, a significant amount of cash deposits were made into accounts at First Bank associated with Leslie Sermos and David Josh Sermos.

111.    David Josh Sermos's businesses (FGSP and CGSP) have reported losses totaling over $1,500,000.00 since 2015, with no gross receipts other than the sale of FGSP's MIP license.   In March 2020, over $350,000.00 in cash was seized from locations associated with David Josh Sermos.

112.    This is all indicative of money laundering activities to disguise the ownership and nature of any illegal proceeds generated from the sale of narcotics.   David Josh

Sermos is a distributor of multi-pounds of marijuana and his businesses (FGSP and CGSP) were used to facilitate the distribution of narcotics.

113.    Therefore, the proceeds derived from the sale of FGSP's MIP license, a business engaged in the distribution of narcotics and money laundering, constitute and/or are traceable to property involved in money laundering in violation of 18 U.S.C. §§ 1956, 1957 and, therefore, are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). Further, defendant assets were derived from proceeds traceable to an exchange of a controlled substance in violation of 21 U.S.C. § 801, *et seq.*, and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

<u>VERIFICATION OF ANDREAS McKEE</u>
<u>SPECIAL AGENT, HOMELAND SECURITY INVESTIGATIONS</u>

I, Special Agent Andreas McKee, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

DATED:   July 30, 2020

Andreas McKee, Special Agent
Homeland Security Investigations

## FIRST CLAIM FOR RELIEF

114.    The Plaintiff repeats and incorporates by reference the paragraphs above.

115.    By the foregoing and other acts, defendant $111,720.00 in United States currency was moneys furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

116.    The Plaintiff repeats and incorporates by reference the paragraphs above.

117.    By the foregoing and other acts defendant $111,720.00 in United States currency constitutes property involved in violations of 18 U.S.C. §§ 1956 and 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELIEF

118.    The Plaintiff repeats and incorporates by reference the paragraphs above.

119.    By the foregoing and other acts, defendant $238,400.00 in United States currency from Alpine Bank self-service storage box #103 was monies furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FOURTH CLAIM FOR RELIEF

120.    The Plaintiff repeats and incorporates by reference the paragraphs above

121.    By the foregoing and other acts, defendant $238,400.00 in United States

currency from Alpine Bank self-service storage box #103 constitutes property involved in violations of 18 U.S.C. §§ 1956 and 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

**FIFTH CLAIM FOR RELIEF**

122.    The Plaintiff repeats and incorporates by reference the paragraphs above.

123.    By the foregoing and other acts, defendant $3,861.00 from Alpine Bank account #8910777286 was moneys furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

**SIXTH CLAIM FOR RELIEF**

124.    The Plaintiff repeats and incorporates by reference the paragraphs above.

125.    By the foregoing and other acts, defendant $3,861.00 from Alpine Bank account #8910777286 constitutes property involved in violations of 18 U.S.C. §§ 1956 and 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

**SEVENTH CLAIM FOR RELIEF**

126.    The Plaintiff repeats and incorporates by reference the paragraphs above.

127.    By the foregoing and other acts, defendant $151,208.68 from Alpine Bank account #8970777267 was moneys furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## EIGHTH CLAIM FOR RELIEF

128.   The Plaintiff repeats and incorporates by reference the paragraphs above.

129.   By the foregoing and other acts, defendant $151,208.68 from Alpine Bank account #8970777267 constitutes property involved in violations of 18 U.S.C. §§ 1956 and 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## NINTH CLAIM FOR RELIEF

130.   The Plaintiff repeats and incorporates by reference the paragraphs above.

131.   By the foregoing and other acts, defendant 2020 Toyota Rav4, VIN: 2T3A1RFV5LC064271 is property derived from proceeds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or from moneys used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.* Therefore, defendant 2020 Toyota Rav4, VIN: 2T3A1RFV5LC064271   is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TENTH CLAIM FOR RELIEF

132.   The Plaintiff repeats and incorporates by reference the paragraphs above.

133.   By the foregoing and other acts, defendant 2020 Toyota Rav4, VIN: 2T3A1RFV5LC064271, constitutes property involved in violations of 18 U.S.C. §§ 1956 and 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## ELEVENTH CLAIM FOR RELIEF

134.   The Plaintiff repeats and incorporates by reference the paragraphs above.

135.   By the foregoing and other acts, defendant 2018 BMW XI, VIN: WBA8A3C52JA498879 is property derived from proceeds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or from moneys used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq*. Therefore, defendant 2018 BMW XI, VIN: WBA8A3C52JA498879 is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## TWELFTH CLAIM FOR RELIEF

136.   The Plaintiff repeats and incorporates by reference the paragraphs above.

137.   By the foregoing and other acts, defendant 2018 BMW XI, VIN: WBA8A3C52JA498879, constitutes property involved in violations of 18 U.S.C. §§ 1956 and 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRTEENTH CLAIM FOR RELIEF

138.   The Plaintiff repeats and incorporates by reference the paragraphs above.

139.   By the foregoing and other acts, defendant 2018 BMW XI, VIN: WBA8A3C52JA498879 was used, or intended to be used to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance in violation of 21 U.S.C. § 801 *et seq.* and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(4).

## FOURTEENTH CLAIM FOR RELIEF

140.   The Plaintiff repeats and incorporates by reference the paragraphs above.

141.   By the foregoing and other acts, defendant $200,060.00 from Alpine Bank account #8970733187 was moneys furnished or intended to be furnished in exchange for

a controlled substance, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## FIFTEENTH CLAIM FOR RELIEF

142.   The Plaintiff repeats and incorporates by reference the paragraphs above.

143.   By the foregoing and other acts, defendant $200,060.00 from Alpine Bank account #8970733187 constitutes property involved in violations of 18 U.S.C. §§ 1956 and 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant assets in favor of the United States, that the United States be authorized to dispose of the defendant assets in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant assets and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 31st day of July 2020.

Respectfully submitted,

JASON R. DUNN
United States Attorney

By: s/ *Laura B. Hurd*
Laura B. Hurd
Assistant United States Attorney
1801 California Street, Ste. 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0402
E-mail: Laura.Hurd@usdoj.gov
*Attorney for Plaintiff*